IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DANITA DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS, INC.,<br><br>    Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Danita Davis ("Plaintiff" or "Ms. Davis"), by and through her undersigned counsel, and files this, her Complaint, and shows the Court as follows:

## NATURE OF COMPLAINT

1. Plaintiff brings this action for damages and reasonable attorney fees against Defendant Express Scripts, Inc. ("Defendant" or "Express Scripts") for violations of her rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and for age and race discrimination.

2. This action challenges Defendant's discriminatory conduct in subjecting Plaintiff to disparate treatment and a hostile work environment based on her race and age, retaliating against her for engaging in protected activity by opposing racially discriminatory practices and filing internal ethics complaints, and ultimately terminating her employment after more than fifteen years of service.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of

1

1964, 42 U.S.C. § 2000e *et seq* and the Age Discrimination in Empoyment Act of 1967, 29 U.S.C. § 621 *et seq.*

4. Venue is proper in this Court because Plaintiff was employed by Defendant and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## ADMINISTRATIVE PROCEDURES

5. Plaintiff has fulfilled all conditions precedent necessary to proceed with this cause of action. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge Number 560-2025-03040, on June 10, 2025. Plaintiff received her Notice of Right to Sue on about April 9, 2026.

## PARTIES

6. Plaintiff Danita Davis is an African American female and a resident of St. Louis, Missouri. At all relevant times, Plaintiff was employed by Defendant from October 26, 2009, until her termination on February 3, 2025.

7. Defendant Express Scripts, Inc. is a pharmacy benefit manager that provides pharmacy services to health plans, employers, and government agencies, and is one of The Cigna Group companies. At all times relevant to this action, Express Scripts has conducted business in Missouri and the unlawful employment practices alleged herein were committed within this jurisdiction.

8. At all times relevant hereto, Defendant has been an employer engaged in an industry affecting commerce and, upon information and belief, has employed the number of employees required to satisfy the coverage thresholds applicable to the federal employment statutes under which this action is brought.

2

9.  Defendant may be served with process by delivering a copy of the summons and complaint to its registered agent at 5661 Telegraph Rd Ste 4BSaint Louis, MO 63129-4275, through the registered agent of C T Corporation System.

## FACTUAL ALLEGATIONS

10.  Plaintiff was hired by Express Scripts on October 26, 2009, as a Testing Operations Analyst. During her tenure, Plaintiff reported to several different managers and advanced to the position of Quality Review and Audit Lead Analyst.

11.  As a Quality Review and Audit Lead Analyst, Plaintiff was responsible for complex and large-scale testing projects and initiatives, including co-leading implementation testing, working directly with Account Teams, Client Service Teams, Operations, and Product partners, creating and reviewing testing data for quality and accuracy, communicating status and risk to leadership, and supporting ongoing quality controls and process improvements.

12.  During most of her employment with Express Scripts, Plaintiff was an employee who did not have significant issues and performed well.

13.   On April 9, 2023, Plaintiff began reporting to Crissy Nyhof ("Nyhof"), Quality Review and Audit Senior Manager, who self-identifies as White.

14.  Shortly after Plaintiff began reporting to Nyhof, Nyhof complained that Plaintiff and another African American female on the team were not meeting deliverables and stated there would be coachings if they did not meet them.

15.  On May 18, 2023, Plaintiff received a formal Performance Coaching in Workday, citing quality of work, timeliness of work deliverables, and communication and responsiveness as areas of concern.

3

16. On June 5, 2023, Plaintiff received a Verbal Warning for Performance.

17. Following the June 2023 verbal warning, Plaintiff showed signs of improvement and it was determined that a formal Performance Improvement Plan was not necessary at that time.

18. On May 24, 2024, Defendant issued coaching plans to Plaintiff and another African American colleague, citing an overdue deliverable, while other members of the team with similar performance issues were not subjected to coaching.

19. On June 10, 2024, Plaintiff filed an internal ethics complaint via the company's ethics hotline, stating that she believed the coaching plans issued to her and the other African American female were racially motivated, as white individuals had performed the same or worse and had not received any coachings.

20. Plaintiff followed up on the ethics complaint weekly for approximately six weeks before being contacted by a representative from Employee Relations.

21. On July 24, 2024, Defendant's Employee Relations department closed the investigation, finding no evidence of discrimination.

22. Plaintiff went on a leave of absence from August 11, 2024, through August 27, 2024.

23. Following the ethics complaint, Nyhof's treatment of Plaintiff continued to worsen.

24. Throughout the relevant period, white individuals who performed the same or worse than Plaintiff were not subjected to coaching or discipline by Nyhof, while Plaintiff and other African American employees were singled out for discipline. A Caucasian female employee at the same level as Plaintiff was not assigned projects due to chronic attendance issues and was not disciplined.

25.  On September 20, 2024, Plaintiff was assigned a project involving testing input templates. The circumstances and scope of what was expected of Plaintiff on the project changed repeatedly.

26.  On October 16, 2024, Plaintiff received a second Verbal Warning for Performance, citing incomplete assignments for testing templates, failure to provide on-time updates, and lack of urgency.

27.  On November 20, 2024, Plaintiff was placed on a formal Performance Improvement Plan ("PIP"). The PIP contained no objective measures and was not seriously followed.

28.  While on the PIP, Plaintiff continued to be interviewed internally for higher-level positions and was recognized with performance-based awards for her work.

29.  On November 26, 2024, Plaintiff filed a second internal ethics complaint alleging that, since May 2023, Nyhof had created a hostile work environment. Plaintiff stated that ongoing treatment by Nyhof caused her significant anxiety, affecting her work performance, sleep patterns, and mood.

30.  Plaintiff requested reassignment to a different department or role. Her request was denied.

31.  On January 24, 2025, Defendant's Employee Relations department closed the second ethics investigation, finding no evidence of a hostile work environment, no evidence of discriminatory practices, and no violations of company policy.

32.  Plaintiff was not contacted by an investigator at any point during the second investigation.

33.  On February 3, 2025, Plaintiff received a surprise meeting invite from Nyhof at which she was told she was terminated effective immediately. The stated reason was failure to meet the performance standards outlined in the PIP issued on November 20, 2024.

34.  Plaintiff had worked for Express Scripts for more than fifteen years without any significant disciplinary history prior to reporting to Nyhof.

35.  The decision to terminate Plaintiff was made by Nyhof in consultation with her manager, Tiffany Stevens, Operations Director, and Employee Relations.

36.  Other individuals of color under Nyhof's supervision resigned due to mental health concerns connected with Nyhof's treatment of them. Plaintiff has been made aware of at least two individuals over the age of forty who were subjected to Nyhof's conduct and either resigned or were terminated.

37.  Although Defendant purports to provide a legitimate, non-discriminatory reason for Plaintiff's termination, that reason is pretextual.

38.  Plaintiff was treated less favorably in the terms and conditions of employment than similarly situated employees outside her protected classes.

39.  Plaintiff's termination was causally connected to her protected activity of opposing racially discriminatory employment practices and filing internal complaints.

### CLAIMS FOR RELIEF

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

40.  Plaintiff re-alleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

41.  Plaintiff is an African American female and a member of a protected class under Title VII.

42.  Plaintiff was qualified for her position as Quality Review and Audit Lead Analyst and was able to perform the essential functions of her job, as evidenced by her more than fifteen years of

employment, her continued consideration for internal promotions, and recognition with performance-based awards.

43. Defendant subjected Plaintiff to disparate treatment in the terms and conditions of her employment, including by singling her out for discipline and performance coaching while similarly situated employees outside her protected class who engaged in the same or worse conduct were not disciplined.

44. Defendant terminated Plaintiff's employment on February 3, 2025, under circumstances giving rise to a reasonable inference of race discrimination.

45. Although Defendant asserts a legitimate, non-discriminatory reason for Plaintiff's termination, that reason is pretextual.

46. As a direct and proximate result of Defendant's actions, Plaintiff has suffered economic and non-pecuniary damages.

47. Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

48. Defendant is therefore liable for damages proximately resulting from its discriminatory conduct toward Plaintiff.

### COUNT II: HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

49. Plaintiff re-alleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

50. Beginning in or around May 2023 and continuing through the date of Plaintiff's termination on February 3, 2025, Plaintiff's supervisor, Nyhof, subjected Plaintiff to a pattern of intimidation,

unfair criticism, inconsistent discipline, and disparate treatment that created a hostile work environment based on Plaintiff's race.

51.  The hostile conduct was severe or pervasive and unreasonably interfered with Plaintiff's work performance. Plaintiff experienced significant anxiety affecting her work performance, sleep patterns, and mood as a result of the hostile work environment created by Nyhof.

52.  Plaintiff reported the hostile work environment through Defendant's internal ethics complaint process, but Defendant failed to take adequate corrective action.

53.  As a direct and proximate result of Defendant's failure to address and remedy the hostile work environment, Plaintiff has suffered economic and non-pecuniary damages.

54. Defendant is therefore liable for damages proximately resulting from the hostile work environment to which Plaintiff was subjected.

**COUNT III: RETALIATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

55.  Plaintiff re-alleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

56.  Plaintiff engaged in protected activity under Title VII by filing internal ethics complaints on June 10, 2024, and November 26, 2024, opposing racially discriminatory employment practices and reporting a hostile work environment based on race.

57.  Following Plaintiff's protected complaints, Defendant escalated disciplinary action against Plaintiff, including issuing a second verbal warning on October 16, 2024, placing Plaintiff on a formal PIP on November 20, 2024, and ultimately terminating Plaintiff's employment on February 3, 2025.

58. The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions, together with the pattern of escalating discipline following each complaint, supports a causal connection between Plaintiff's protected activity and her termination.

59. Defendant's stated reasons for its adverse actions are pretextual.

60. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered economic and non-pecuniary damages.

61. Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

62. Defendant is therefore liable for damages proximately resulting from its retaliation against Plaintiff.

### COUNT IV: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

63. Plaintiff re-alleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

64. At the time of her termination, Plaintiff was 56 years old and a member of a protected class under the federal statute prohibiting age discrimination in employment, The Age Discrimination in Employment Act of 1967,

65. Plaintiff was qualified for her position and was performing her job satisfactorily, as evidenced by her continued consideration for internal promotions and recognition with performance-based awards during the relevant period.

66. Plaintiff's termination constitutes an adverse employment action. Other individuals over the age of forty under Nyhof's supervision were similarly subjected to adverse treatment and either resigned or were terminated.

9

67. Although Defendant asserts a legitimate, non-discriminatory reason for Plaintiff's termination, that reason is pretextual.

68. As a direct and proximate result of Defendant's age discrimination, Plaintiff has suffered economic and non-pecuniary damages.

69. Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

70. Defendant is therefore liable for damages proximately resulting from its discriminatory conduct toward Plaintiff on account of her age.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Danita Davis respectfully prays for judgment against Defendant as follows:

(a) A trial by jury as to all triable issues of fact;

(b) Back pay, front pay, and other compensatory damages for lost wages and benefits resulting from Defendant's unlawful conduct;

(c) General damages for mental and emotional suffering caused by Defendant's discriminatory and retaliatory conduct;

(d) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in violation of Plaintiff's rights;

(e) Declaratory relief establishing that Defendant violated Plaintiff's statutory rights;

(f) Injunctive relief ordering Plaintiff's reinstatement to her former position, or front pay in lieu thereof, and prohibiting Defendant from engaging in further unlawful conduct of the type described herein;

10

(g) Reasonable attorney's fees and expenses of litigation;

(h) Prejudgment and post-judgment interest at the maximum rate allowed by law;

(i) All costs of this action; and

(j) Such other and further relief as this Court deems just and proper.

Respectfully submitted this 9th day of June 2026.

**BARRETT & FARAHANY**

s/ *Alan G. Crone*

Alan G. Crone
Tennessee Bar No. 014285
Alexander William Gass
Missouri Bar No. 72810

*Counsel for Plaintiff Danita Davis*

2921 Piedmont Road
Atlanta, GA 30305
P: (901) 737-7740
P: (314) 973 3163
F: (404) 541 4772
acrone@justiceatwork.com
agass@justiceatwork.com

11

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

DANITA DAVIS,

   Plaintiff,

v.

EXPRESS SCRIPTS, INC.,

   Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## DECLARATION AND VERIFICATION

I, **Danita Davis**, verify and declare that the facts stated in the foregoing Verified

Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

Danita Davis (Jun 5, 2026 10:23:13 CDT)

Danita Davis

06/05/2026

Date

12